UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
OSCAR SABLE,                                   :
                                                                    REPORT & RECOMMENDATION
                           Petitioner,         :         09 Civ. 7242 (WHP) (GWG)

                           -v.-                :

SUPERINTENDENT DALE ARTUS,                     :

                           Respondent.         :
-------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

      Oscar Sable, proceeding pro se, brings this petition seeking a writ of habeas corpus

pursuant to 28 U.S.C. § 2254 following his conviction in state court for multiple counts of

burglary and larceny.  For the reasons stated below, his petition should be denied.

I.      <u>BACKGROUND</u>

      A.    <u>Trial and Sentence</u>

      Sable was tried in connection with four burglaries in Manhattan.  <u>See</u> Respondent's

Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus, filed Mar. 15,

2010 (Docket # 10) ("Resp. Mem."), at 3-4.  The details of the testimony and evidence at trial

are for the most part not relevant to this petition.  In brief, the prosecution submitted video

images from surveillance cameras at the four locations, each of which depicted two individuals

committing a burglary at that location. (<u>See</u> Pangallo: Tr.3: 126-28; Eng-Wallace: Tr.3: 151-52;

Gonzalez: Tr.3: 170; St. Roc: Tr.3: 201-03; Reinholtz: Tr.3: 233).[1]  An off-duty police officer at

_____

      [1] "Tr." refers to the transcript of the trial held in this case from June 21, 2004 through
June 29, 2004.  <u>See</u> Trial Transcript, Vol. 1 & 2, filed Mar. 16, 2010 (Docket ## 12-13).
Because the transcript is divided into several parts each with separate pagination, we specify
each part as follows: "Tr.1" refers to the June 21, 2004 proceedings in volume one paginated
from 1 through 219; "Tr.2" refers to the June 22, 2004 proceedings in volume one paginated

the scene of the last burglary, which took place on May 11, 2003, saw two men emerge from the location carrying garbage bags and enter a van.  (See Murphy: Tr.3: 253-54).  He recorded the van's license plate number and discovered a broken security gate at the building.  Id. at 254-55. Detective Thomas Hackett spoke with the registered owner of the van, Artes Santiago, and her husband.  (See Hackett: Tr.3: 269-73).  Following the detective's conversation with the Santiagos, Sable became the focus of his investigation.  See id. at 271.  Detective Hackett arrested Sable at his parole office on June 18, 2003.  See id. at 273.

At trial, Detective Hackett identified Sable as one of the men in the surveillance stills taken from the four crime scenes.  See id. at 278-83.   The prosecution also called Sable's parole officer, Stan Odume.  (See Odume: Tr.3: 289).  Odume identified himself as Sable's parole officer and testified that based on his frequent interactions with the defendant he could identify Sable as one of the men who appeared in the surveillance images.  See id. at 290-301.  The prosecution relied on this identification and the surveillance images for purposes of arguing that Sable committed the burglaries.  Sable did not call any witnesses.

During the presentation of the People's case, the defense indicated that it wished to question Detective Margaret Eng-Wallace, who investigated the first two burglaries, about another suspect, Andrew Williams.  (See Tr.3: 95-100).  The prosecution objected and asked the court to preclude the defense from questioning Detective Eng-Wallace about whether Williams resembled the person in the surveillance stills "more strongly" than Sable.  Id.  The court stated

from 1 through 86; "Tr.3" refers to proceedings from June 22, 2004 through June 28, 2004 in volumes one and two paginated from 1 through 320; "Tr.4" refers to the June 28, 2004 proceedings in volume two paginated 1 through 41; and "Tr.5" refers to the June 29, 2004 proceedings in volume two paginated 1 through 43.  "S" refers to the sentencing hearing held on September 15, 2004.  See Trial Transcript, Vol. 2, filed Mar. 16, 2010 (Docket # 13).

that while a photograph of Williams might be admissible for the jury's consideration, Detective Eng-Wallace's testimony would be irrelevant.  Id. at 97-99.  During the defense's cross-examination, the court did not allow the defense to ask questions of Detective Eng-Wallace regarding other potential suspects in the case or to ask whether she had sought "assistance in locating the suspects in this case."  (Eng-Wallace: Tr.3: 157-58).  Ultimately, defense counsel did not introduce the photograph of Williams.

During summation, the prosecution emphasized Odume's identification of Sable and highlighted evidence tying the four burglaries together to argue that there was "one burglar in all four incidents."  (Tr.4: 28-31).  In its jury charge, the court instructed that Odume's relationship with Sable as his parole officer was admitted only to show his ability to identify Sable, not as evidence of Sable's criminal propensity.  (Tr.5: 6).

The jury found Sable guilty of one count of second-degree burglary, three counts of third-degree burglary, two counts of third-degree grand larceny, and two counts of third-degree criminal possession of stolen property.  (Tr.5: 39-41).

The trial court adjudicated Sable a mandatory persistent felony offender having found he had previously been convicted of two felonies.  (See S. 18).  The court sentenced Sable to 25 years to life for second-degree burglary to run concurrently with consecutive sentences of 3 ½ to 7 years for each third-degree burglary charge, and concurrent sentences of 3 ½ to 7 years each for grand larceny and possession of stolen property.  (S. 30-31).

B.    State Court Appeals

1.    Direct Appeal

On January 12, 2007, Sable filed a direct appeal through a new attorney raising the

3

following issues: (1) the trial court improperly allowed Odume to identify Sable in the videos,

admitted hearsay testimony from an uncalled witnesses connecting Sable to the burglaries, and

precluded the defense from eliciting that Eng-Wallace believed that someone else "strongly

resembled" the person in surveillance videos, or in the alternative that trial counsel was

ineffective for not objecting to Odume's identification testimony; (2) the trial court should have

instructed the jury not to commingle evidence for purposes of proving Sable's guilt for each

burglary, or in the alternative that trial counsel was ineffective for not requesting this instruction;

(3) the trial court's persistent felony offender finding relied on facts not found by a jury in

violation of Apprendi v. New Jersey, 530 U.S. 466 (2000); and (4) Sable was improperly

charged the DNA databank fee. See Brief for Defendant-Appellant (annexed as Ex. A to

Declaration in Opposition to the Petition for a Writ of Habeas Corpus, filed Mar. 15, 2010

(Docket # 11) ("Resp. Decl.")) ("Pet. Direct Appeal Br."), at 13-44.

On October 9, 2007, the Appellate Division affirmed the conviction finding "[t]he only

issue . . . arguably preserved" with respect to the identification issues was Sable's argument that

Odume should not have been revealed to be his parole officer. People v. Sable, 44 A.D.3d 390,

390 (1st Dep't 2007). The court rejected the claim, finding that the trial court had "properly

exercised its discretion in receiving very limited information about defendant's parole status,

coupled with thorough instructions to the jury during the trial and at its conclusion." Id. It

further ruled that the trial court had properly exercised its discretion to preclude Sable "from

eliciting testimony that an investigating detective had believed that a third person resembled the

4

person depicted in the tapes." Id. at 391. The Court found that the detective "had no familiarity with the appearance of either defendant or the third person, and her opinion as to any similarity was irrelevant." Id. (citation omitted). The court concluded that Sable had received effective assistance of counsel, his claim regarding the DNA databank fee was moot, and his Apprendi claim was without merit. Id. (citing Almendarez-Torres v. United States, 523 U.S. 224 (1998)). The court found Sable's remaining claims unpreserved and declined to review them "in the interest of justice," noting however that if reviewed, they would not provide a basis for reversal. Id. The Court of Appeals denied leave to appeal on January 14, 2008. See People v. Sable, 9 N.Y.3d 1038 (2008).

2.    Section 440.10 Motion

Several weeks after the Appellate Division issued its decision, Sable filed a pro se motion pursuant to New York Criminal Procedure Law § 440.10. See Notice of Motion to Vacate Judgment Pursuant to C.P.L. § 440.10 (c), (h), dated Dec. 10, 2007 (annexed as Ex. G to Resp. Decl.) ("Section 440.10 Mot."). A "questions presented" page in his attached memorandum of law listed four bases for his motion: (1) his arrest violated the Fourth Amendment; (2) "tailored [police] testimony . . . circumvent[ed]" his "legitimate constitutional claims;" (3) the prosecution knowingly presented false testimony; and (4) ineffective assistance of counsel. See id. In the argument that followed, however, Sable did not address these points but instead argued that his conviction should be vacated because testimony admitted at trial violated his rights under Crawford v. Washington, 541 U.S. 36 (2004), and because he was denied effective assistance of trial counsel. See id. at 10, 16. On April 28, 2008, the state trial court denied Sable's motion, concluding that the issues were not properly before the court either because they were record-

5

based or had already been raised in his direct appeal to the Appellate Division.  Order and

Opinion, dated Apr. 28, 2008 (annexed as Ex. I to Resp. Decl.) ("Apr. 28, 2009 Order"), at 3.

Sable sought leave to appeal, see Notice of Application Requesting Permission and

Leave to Appeal, dated May 28, 2008 (annexed as Ex. J to Resp. Decl.), which the Appellate

Division denied on July 23, 2008, see Certificate Denying Leave, dated July 23, 2008 (annexed

as Ex. L to Resp. Decl.).  Sable moved to reargue his motion for leave to appeal, see Motion for

Reargument Pursuant to Rule 640.9, dated Aug. 18, 2008 (annexed as Ex. M to Resp. Decl.),

which was denied on October 23, 2008, see Order Denying Leave Upon Reargument, dated Oct.

23, 2008 (annexed as Ex. N to Resp. Decl.).

### 3.      Coram Nobis Petition

By motion dated March 24, 2009, Sable moved for a writ of error coram nobis.  See

Notice of Motion for Writ of Error Coram Nobis (annexed as Ex. O to Resp. Decl.) ("Writ of

Error Coram Nobis"); Memorandum of Law (attached to Writ of Error Coram Nobis) ("Coram

Nobis Mem.").   He argued that his appellate counsel was ineffective because (1) counsel failed

to obtain the complete transcript of grand jury proceedings and thus failed to alleged

improprieties occurring before the grand jury, and (2) counsel failed to raise the fact that Sable's

co-defendant was indicted for a lesser charge.   See Writ of Error Coram Nobis at 1-3;[2] Coram

Nobis Mem. at 2-10.  The Appellate Division denied the application on May 28, 2009.  See

Order (annexed as Ex. Q to Resp. Decl.).  Sable did not seek leave to appeal this denial.

---

[2] We have inserted page numbers in this and other exhibits where necessary.

C.    <u>The Instant Petition</u>

      On August 17, 2009, Sable timely filed the instant petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  <u>See</u> Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, filed Aug. 17, 2009 (Docket # 2) ("Pet."); Memorandum of Law, filed Aug. 17, 2009 (Docket # 3) ("Pet. Mem.").  In his accompanying memorandum of law, Sable presents arguments that differ from those listed in his petition.  In light of our obligation to interpret Sable's papers as raising "the strongest possible arguments that they suggest," <u>Triestman v. Fed. Bureau of Prisons</u>, 470 F.3d 471, 474-75 (2d Cir. 2006) (quoting <u>Pabon v. Wright</u>, 459 F.3d 241, 248 (2d Cir. 2006)), we interpret the petition as raising all the grounds discussed, which consist of the following: (1) trial counsel was ineffective for a) failing to preserve a <u>Crawford</u> claim for appeal, b) failing to object to testimony on Odume's relationship to Sable, and c) failing to properly cross-examine the prosecution's witnesses, <u>see</u> Pet. Mem. at 35-44; (2) appellate counsel was ineffective for overlooking certain errors by trial counsel, <u>see</u> Pet. at 15; Pet Mem. at 45-47; (3) the trial court improperly admitted testimony from Sable's parole officer identifying Sable as the individual in the surveillance footage and improperly admitted hearsay testimony linking Sable to the burglaries while at the same time precluding examination of Detective Eng-Wallace about another potential suspect, <u>see</u> Pet. at 5-6; (4) Sable was improperly denied an instruction warning the jury not to commingle evidence, <u>see</u> Pet. at 7-8; and (5) the trial court improperly adjudicated Sable a mandatory persistent felony offender at sentencing based on evidence not found by a jury, <u>see</u> Pet. at 9.[3]

---

     [3] In a letter dated May 22, 2010, Sable withdrew any claim concerning the DNA databank fee.  <u>See</u> Verified Reply and Objections to Respondent's Opposition and Memorandum of Law, filed Sept. 2, 2010 (Docket # 18) ("Reply"), at 18.

Respondent filed papers in opposition to the petition on March 15, 2010.  See Resp. Mem.; Resp. Decl.  Prior to filing a reply, Sable submitted two letters seeking a stay in order for him to (1) pursue a claim pursuant to People v. Rosario, 9 N.Y.2d 286 (1961), in state court, which he had not raised in his habeas petition, and (2) seek leave to appeal the denial of his coram nobis petition.  See Letter, dated Mar. 23, 2010; Letter, dated Apr. 2, 2010 (Docket # 17) ("Apr. 2, Letter").  On May 7, 2010, this Court issued an order denying both requests.  See Order, dated May 7, 2010 (Docket # 15).  The Court noted that the petition could not be amended to include the Rosario claim because it was time-barred.  See id. at 1.  As for the other claim, Sable had not shown "good cause" for his failure to exhaust his coram nobis petition prior to filing his habeas petition in federal court.  Id.

II.     APPLICABLE LAW

        A.      The Legal Standard for Petitions Brought Pursuant to 28 U.S.C. § 2254

        A petition for a writ of habeas corpus may not be granted with respect to any claim that has been "adjudicated on the merits" in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

        For a claim to be "adjudicated on the merits" within the meaning of section 2254(d), it must "finally resolv[e] the parties' claims, with res judicata effect," and it must be "based on the substance of the claim advanced, rather than on a procedural, or other, ground."  Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001) (citations omitted).  As long as "there is nothing in

8

its decision to indicate that the claims were decided on anything but substantive grounds," a state court decision will be considered to be "adjudicated on the merits" even if it fails to mention the federal claim and no relevant federal case law is cited.  Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001); accord Rosa v. McCray, 396 F.3d 210, 220 (2d Cir.) ("This standard of review applies whenever the state court has adjudicated the federal claim on the merits, regardless of whether the court has alluded to federal law in its decision."), cert. denied, 546 U.S. 889 (2005). Moreover, a state court's "determination of a factual issue" is "presumed to be correct," and that presumption may be rebutted only "by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to" clearly established federal law only "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives" at a different result.  Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  Habeas relief is available under the "unreasonable application" clause only "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413. A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  Id. at 411.  Rather, the state court's application must have been "objectively unreasonable" – a standard that "demands that state-court decisions be given the benefit of the doubt."  Renico v. Lett, 130 S. Ct. 1855, 1862 (2010) (citation and internal quotation marks omitted).  The "determination of whether a court has unreasonably applied a legal standard depends in large measure on the specificity of the standard in question."  Brisco v.

Ercole, 565 F.3d 80, 89 (2d Cir.), cert. denied, 130 S. Ct. 739 (2009).  "The more general the

rule, the more leeway courts have in reaching outcomes in case-by-case determinations"

inasmuch as the application of a general standard to a specific case "can demand a substantial

element of judgment."  Yarborough v. Alvarado, 541 U.S. 652, 664 (2004); accord Brisco, 565

F.3d at 90 (court applying a "fact-dependent standard . . . to the facts of a specific case is . . .

entitled to significant 'leeway' when [a habeas court] review[s] its decision for reasonableness")

(quoting Yarborough, 541 U.S. at 664).

     Only holdings of the Supreme Court are considered for purposes of determining

"[c]learly established federal law."  Rodriguez v. Miller, 537 F.3d 102, 106 (2d Cir. 2008)

(citation omitted).  Thus, "[n]o principle of constitutional law grounded solely in the holdings of

the various courts of appeals or even in the dicta of the Supreme Court can provide the basis for

habeas relief."  Id. at 106-07 (citation omitted).  Where there is "[n]o holding" from the Supreme

Court on the question presented, Carey v. Musladin, 549 U.S. 70, 77 (2006), or where Supreme

Court cases "give no clear answer" to the question presented in the petition, Wright v. Van

Patten, 552 U.S. 120, 126 (2008) (per curiam), a state court's decision cannot be contrary to or

an unreasonable application of clearly established federal law.

     B.    Exhaustion

     "Before a federal court may grant habeas relief to a state prisoner," however, "the

prisoner must exhaust his remedies in state court."  O'Sullivan v. Boerckel, 526 U.S. 838, 842

(1999); see 28 U.S.C. § 2254(b)(1)(A).  The Supreme Court has held:

> Because the exhaustion doctrine is designed to give the state courts a full
> and fair opportunity to resolve federal constitutional claims before those
> claims are presented to the federal courts, . . . state prisoners must give the
> state courts one full opportunity to resolve any constitutional issues by

invoking one complete round of the State's established appellate review
process.

O'Sullivan, 526 U.S. at 845; accord Smith v. Duncan, 411 F .3d 340, 347 (2d Cir. 2005).  Thus,

a petitioner is required to have presented each claim to all available levels of the state courts.

See, e.g., Baldwin v. Reese, 541 U.S. 27, 29 (2004) ("the prisoner must fairly present his claim

in each appropriate state court (including a state supreme court with powers of discretionary

review")) (citations and internal quotation marks omitted).

     C.     Procedural Bar

     Even where a claim has been exhausted, it may not be reviewed if the claim has been

rejected based on a state procedural rule that constitutes an adequate and independent ground for

the decision.  The Second Circuit has summarized the law governing habeas review of claims

dismissed under state procedural law as follows:

> This court is generally procedurally barred from considering a ruling that "fairly
> appear[s] to rest primarily on state procedural law." Jimenez v. Walker, 458 F.3d
> 130, 138 (2d Cir. 2006) (citation omitted).  Even where the state court has ruled
> on the merits of a federal claim "in the alternative," federal habeas review is
> foreclosed where the state court has also expressly relied on the petitioner's
> procedural default.  Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005) (citation
> omitted).  To bar federal habeas review, however, the state court's decision must
> rest not only on an independent procedural bar under state law, but also on one
> that is "adequate to support the judgment." Jimenez, 458 F.3d at 138.

> A state procedural bar is "adequate" if it "is firmly established and regularly
> followed by the state in question" in the specific circumstances presented in the
> instant case.  Monroe v. Kuhlman, 433 F.3d 236, 241 (2d Cir. 2006) (citation
> omitted).  The "guideposts" for analyzing the issue of adequacy, articulated in the
> context of a procedural default occurring at trial, are:

>> (1) whether the alleged procedural violation was actually relied on
>> in the trial court, and whether perfect compliance with the state
>> rule would have changed the trial court's decision; (2) whether
>> state caselaw indicated that compliance with the rule was
>> demanded in the specific circumstances presented; and (3) whether

> petitioner had "substantially complied" with the rule given "the
> realities of trial," and, therefore, whether demanding perfect
> compliance with the rule would serve a legitimate governmental
> interest.

Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003) (citation omitted).  The Cotto guideposts also apply to testing the adequacy of a procedural default raised in a state collateral proceeding.  See, e.g., Clark v. Perez, 450 F. Supp. 2d 396, 426 (S.D.N.Y. 2006).  Because of comity concerns, a decision that a state procedural rule is inadequate should not be made "lightly or without clear support in state law."  Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (citation omitted).

Murden v. Artuz, 497 F.3d 178, 191-92 (2d Cir. 2007), cert. denied, 552 U.S. 1150 (2008).  The Second Circuit has cautioned, however, that "the Cotto factors are not a three-prong test: they are guideposts to aid inquiry . . . there is no need to force square pegs into round holes."  Clark, 510 F.3d at 391.

If a claim is procedurally barred, a petitioner may obtain review of the claim only if he demonstrates "cause and prejudice for the procedural default," or that the "constitutional violation has probably resulted in the conviction of one who is actually innocent of the substantive offense."  Dretke v. Haley, 541 U.S. 386, 393 (2004) (citations and internal quotation marks omitted); accord Murden, 497 F.3d at 194; Doe v. Menefee, 391 F.3d 147, 159-63 (2d Cir. 2004), cert. denied, 546 U.S. 961 (2005).

III.   DISCUSSION

   A.   Ineffective Assistance of Counsel

      1.   Law Governing Ineffective Assistance of Counsel on Federal Habeas Review

To show ineffective assistance of counsel, a petitioner must satisfy both prongs of the two-part test articulated in Strickland v. Washington, 466 U.S. 668, 687-96 (1984).  The Strickland test has been characterized as "rigorous" and "highly demanding."  Pavel v. Hollins,

261 F.3d 210, 216 (2d Cir. 2001) (citations omitted); accord Bell v. Miller, 500 F.3d 149, 155 (2d Cir. 2007) (comparing a successful ineffective assistance of counsel habeas claim to "thread[ing][a] needle").  To meet the Strickland standards, a petitioner must show (1) "that counsel's representation fell below an objective standard of reasonableness," 466 U.S. at 688, and (2) that "any deficiencies in counsel's performance" were "prejudicial to the defense," id. at 692; accord Rosario v. Ercole, 601 F.3d 118, 123 (2d Cir. 2010).

In evaluating the first prong – whether counsel's performance fell below an objective standard of reasonableness – "judicial scrutiny . . . must be highly deferential," and the petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  Bell v. Cone, 535 U.S. 685, 698 (2002) (quoting Strickland, 466 U.S. at 689) (internal quotation marks and bracketing omitted).  "[F]or purposes of effective assistance, not every possible motion need be filed, but rather, only those having a solid foundation."  United States v. Nersesian, 824 F.2d 1294, 1322 (2d Cir.) (citing United States v. Afflerbach, 754 F.2d 866, 870 (10th Cir.), cert. denied, 472 U.S. 1029 (1985)), cert. denied, 484 U.S. 958 (1987).

To satisfy the prejudice requirement, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694; accord Lynn v. Bliden, 443 F.3d 238, 247-48 (2d Cir. 2006), cert. denied, 549 U.S. 1257 (2007).

The Second Circuit has summarized the application of the Strickland test on habeas review as follows:

When a federal court reviews a state court decision under § 2254, "[t]he question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." Knowles v. Mirzayance, --- U.S. ---, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted). The Strickland standard itself is a "general standard," meaning its application to a specific case requires "a substantial element of judgment" on the part of the state court. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L.Ed.2d 938 (2004); accord Knowles, 129 S. Ct. at 1420. Thus, state courts are granted "even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles, 129 S. Ct. at 1420. In order to prevail, a petitioner must overcome that substantial deference and establish that the state court's decision on ineffective assistance was contrary to, or an unreasonable application of, Strickland.

Rosario, 601 F.3d at 123.

### 2.   Ineffective Assistance of Trial Counsel

Sable argues that trial counsel was ineffective for failing to properly preserve his Crawford claim for appellate review. See Pet. Mem. at 35-44. He contends that trial counsel should have objected to the admission of testimony by Detective Hackett that, following his interview with the Santiagos, his investigation focused on Sable. See id. at 39. Sable argues that the Santiagos' statements to Detective Hackett should be viewed as testimonial under Crawford. Id. In addition, Sable alleges that counsel was ineffective for not objecting to Odume's testimony identifying him. Id. at 22. Finally, Sable alleges that trial counsel should have argued that he not be "charged with burglary in the second degree, when [his] co-defendant Manny Santiago was charged" with Burglary in the Third Degree "based upon materially indistinguishable facts." Id. at 47.

With respect to the Crawford ineffective assistance issue, this matter was raised for the first time in Sable's section 440.10 motion. See Section 440.10 Mot. at 16. The trial court found that the claim as to ineffective assistance on this point could have been raised on direct review

14

and thus was barred by C.P.L. § 440.10(2)(c).[4]  Apr. 28, 2009 Order at 2-3.  The respondent

argues that the issue is procedurally barred, Resp. Br. at 41-43, and that the claim, even if

reached, lacks merit.  Id. at 43-46.  It seems clear that the claim is procedurally barred given that

it was not raised on direct appeal, see, e.g., Jones v. Miller, 2004 WL 1416589, at *8-11

(S.D.N.Y. June 25, 2004), and appellate counsel's failure to raise it was not addressed in Sable's

coram nobis application and is thus unexhausted.  But given the fact that the respondent has

addressed the claim on the merits, see Resp. Br. at 43-46, we will do so here as well.

        Sable's trial counsel's representation was not ineffective because Detective Hackett's

testimony did not involve the admission of "testimonial hearsay" as defined by the Supreme

Court in Crawford v. Washington, 541 U.S. 36 (2004).  Crawford held that the Confrontation

Clause "prohibits the admission of out-of-court 'testimonial' statements against a criminal

defendant, unless the declarant is unavailable and the defendant had a prior opportunity to

cross-examine the declarant."  United States v. Williams, 506 F.3d 151, 155-56 (2d Cir. 2007).

At trial, Detective Hackett did not testify to any out-of-court statements, let alone testimonial

statements, made by either Artes or Richard Santiago.  Consequently, there are no statements

that meet the Crawford test: that is, statements involving "a declarant's knowing responses to

structured questioning in an investigative environment or in a courtroom setting where the

declarant would reasonably expect that his or her responses might be used in future judicial

proceedings."  United States v. Saget, 377 F.3d 223, 228 (2d Cir. 2004), cert. denied, 543 U.S.

---

        [4]  The trial court made reference to CPL § 440.10(2)(a) as well, but this provision applies
to matters that were actually raised on appeal and there were no ineffective assistance claims
addressed in Sable's brief on direct appeal other than the claims regarding commingling of
evidence and Odume's identification testimony.  See Pet. Direct Appeal Br. at 22, 33.

1079 (2005).  Instead, Hackett's testimony as to his conversations with the Santiagos operated "merely to complete a narrative or explain the actions of a police officer."  <u>Newland v. Lape</u>, 2008 WL 2485404, at *5 (S.D.N.Y. June 19, 2008); <u>see also</u> <u>id.</u> (state appellate court affirming admission of testimony that trial witness "spoke with a bystander in order to explain why he searched the shopping cart" was not an unreasonable application of <u>Crawford</u>).  Thus, trial counsel's representation was not deficient for failing to preserve the <u>Crawford</u> claim where none existed in first place.  <u>See</u>, <u>e.g.</u>, <u>Jones v. Woods</u>, 2009 WL 4906882, at *3 (E.D.N.Y. Dec. 18, 2009) (counsel's representation effective where there was no "substantive violation of the Confrontation Clause").

Sable's second claim – that counsel was ineffective for failing to object to Odume's identification testimony – was presented and rejected on direct appeal.  <u>See</u> Pet. Direct Appeal Br. at 22.  However, as discussed below in section III.B.3, Sable has not shown that the trial court committed any legal error in admitting Odume's relationship to Sable.  Accordingly, there is no claim for ineffective assistance for failing to preserve this claim.

Finally, Sable alleges that trial counsel should have argued that "he should not have been charged with burglary in the second degree, when [his] co-defendant Manny Santiago was charged" with Burglary in the Third Degree "based upon materially indistinguishable facts." Pet. Mem. at 47.  But Sable admits that trial counsel moved unsuccessfully to dismiss his case based on his co-defendant's lesser charge, <u>see</u> <u>id.</u> at 48, and thus there is no basis on which to conclude that trial counsel was ineffective.

> 3. <u>Application to Sable's Claim of Ineffective Assistance of Appellate Counsel</u>

Sable claims he received ineffective assistance of appellate counsel because appellate

counsel should have argued that trial counsel did not properly investigate his case to uncover evidence that Odume and Detective Hackett falsely testified at trial.  See id. at 45-47.   In particular, he contends that Detective Hackett testified first that one of the burglaries occurred in a residential building, but then described the same building as a "high-rise" at his co-defendant's grand jury proceedings.  Id. at 46.  Separately, he claims Odume's testimony at Sable's parole revocation hearing showed that Odume perjured himself at trial.  See id. at 45-46.

Claims of ineffective assistance of appellate counsel are also evaluated under the Strickland standard.  Smith v. Robbins, 528 U.S. 259, 285 (2000).  Under this standard, "[a]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."  Smith, 528 U.S. at 288 (citing Jones v. Barnes, 463 U.S. 745 (1983)).  "[A] petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."  Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir.), cert. denied, 513 U.S. 820 (1994).  In order to establish prejudice, a petitioner must show "that there was a reasonable probability that [his] claim would have been successful" on appeal.  Id. at 534 (citing Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1992), cert. denied, 508 U.S. 912 (1993)).  While Sable acknowledges that he failed to properly exhaust this claim, see Apr. 2 Letter, it may be denied on the merits as Sable has not shown that appellate counsel was ineffective.  See 28 U.S.C. § 2254(b)(2).

On direct appeal, appellate counsel raised several arguments challenging Sable's conviction, all of which Sable continues to pursue in his federal habeas petition.  See generally Pet. Direct Appeal Br.; Pet. Mem.  Though unsuccessful, Sable cannot show that appellate

17

counsel's decision to pursue these claims in favor of those Sable asserts he should have presented rendered counsel's representation ineffective.

First, Detective Hackett's testimony reveals no inconsistency in his testimony. At trial, Detective Hackett testified that one of the robberies occurred in a T-Mobile store located in a residential building. (See Hackett: Tr.3: 283). According to Sable, he described the same building as a "high rise" at the grand jury proceedings. Pet. Mem. at 46. There is no logical inconsistency between the two, however, as it is common for a residential high rise to also include commercial property on the ground floor. Second, while Sable suggests that trial counsel should have impeached Odume based on testimony he gave at Sable's parole revocation hearing, Sable has not disclosed the date of the parole hearing, provided any summary of the testimony that was given at that hearing, or explained why trial counsel should have known about it. Thus, he has not shown that trial counsel could have uncovered evidence to impeach Odume's testimony at the time of trial. A fortiori, he has not shown that appellate counsel should have known of this testimony.

In sum, Sable has not shown that either of these issues were so obvious that they were required to have been raised on appeal.

### B.    Ability to Present a Defense

Sable contends that the trial court made four improper evidentiary rulings that denied him the ability to present a defense in violation of the Sixth Amendment: (1) the trial court permitted Detective Hackett and Odume to identify Sable as the individual in the surveillance videos; (2) the trial court admitted hearsay testimony in violation of the Confrontation Clause when it allowed Detective Hackett to testify that Sable became the focus of his investigation after

18

interviewing persons who did not testify at the trial; (3) the trial court should not have allowed the jury to know that Odume was Sable's parole officer; and (4) the court should have permitted Detective Eng-Wallace to testify about an alternative suspect whom she once believed resembled the individual appearing in the surveillance footage.  See Pet. Mem. at 11-23.

1.   Legal Standard Governing a Claims of an Unfair Trial Based on Evidentiary Rulings

Because a petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2254(a), "'federal habeas corpus relief does not lie for errors of state law,'" Estelle v. McGuire, 502 U.S. 62, 67 (1991) (quoting Lewis v. Jeffers, 497 U.S. 764, 780, (1990)).  In general, "[e]rroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus."  Taylor v. Curry, 708 F.2d 886, 891 (2d Cir.), cert. denied, 464 U.S. 1000 (1983).  Rather, such an erroneous ruling rises to a federal constitutional violation "only where petitioner can show the error deprived her of a fundamentally fair trial."  Id. 708 F.2d at 891 (emphases omitted); accord Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985); Crawford v. Artuz, 165 F. Supp. 2d 627, 635 (S.D.N.Y. 2001).  The erroneous admission of evidence constitutes a deprivation of due process under the Fourteenth Amendment only if "the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it."  Collins, 755 F.2d at 19.  In other words, the evidence must have been "'crucial, critical, [and] highly significant.'"  Id. (quoting Nettles v. Wainwright, 677 F.2d 410, 414-15 (5th Cir. 1982)).

19

2.    <u>Claims Relating to Trial Witness Identification and Hearsay Testimony</u>

On direct appeal, the Appellate Division held that challenges to the first two evidentiary rulings were unpreserved, <u>see</u> <u>Sable</u>, 44 A.D.3d at 391, and therefore we must consider whether Sable is now procedurally barred from asserting these claims here.

New York law requires a criminal defendant to object contemporaneously at trial in order to challenge a trial court's ruling or instruction on appeal.  <u>See</u> N.Y.C.P.L. § 470.05(2); <u>Jones v. Vacco</u>, 126 F.3d 408, 414 (2d Cir. 1997).   As to the first <u>Cotto</u> factor, "whether the procedural bar was relied upon by the state court . . . is generally inapplicable to the contemporaneous objection rule since the lack of an objection is rarely noted by a trial judge."  <u>Blackman v. Ercole</u>, 2009 WL 4891767, at *4 (E.D.N.Y. Dec. 17, 2009) (citation omitted).  With respect to whether "perfect compliance" would have changed the trial court's decision, application of this factor necessarily involves "speculation."  <u>Cotto</u>, 331 F.3d at 243.  Here, the trial court did not have an opportunity to consider objections to the admission of testimony identifying Sable and testimony regarding why the investigation focused on Sable in the first place.  Thus, perfect compliance would likely have allowed the state court to rule on any challenge to the admission of this evidence on the merits.  <u>Accord</u> <u>Blackman</u>, 2009 WL 4891767, at *4.

As for the second guidepost, state case law reflects "New York's consistent application of its contemporaneous objection rules."  <u>Garcia v. Lewis</u>, 188 F.3d 71, 79 (2d Cir. 1999) (citing <u>Bossett v. Walker</u>, 41 F.3d 825, 829 n. 2 (2d Cir. 1994), <u>cert.</u> <u>denied</u>, 514 U.S. 1054 (1995)); <u>see also</u> <u>Garvey v. Duncan</u>, 485 F.3d 709, 714 (2d Cir. 2007) (to "preserve a claim of error in the admission of evidence at trial under § 470.05(2) a defendant must make his or her position known to the court"); <u>Blackman</u>, 2009 WL 4891767, at *4 ("contemporaneous objection rule is

20

well established for Confrontation Clause objections in New York state caselaw") (collecting cases); Royster v. Ercole, 2008 WL 542505, at *6 (S.D.N.Y. Feb. 29, 2008) ("Under C.P.L. § 470.05(2), the petitioner was required to make a specific constitutional objection to the introduction" of the hearsay testimony at issue during "trial to preserve his claim for appellate review.") (citations omitted).

     As for the third factor, Sable did not substantially comply with the rule requiring him to object to the admission of this testimony.

     Accordingly, Sable's claims are procedurally barred, and we may review them only if he is able to establish either cause and prejudice or actual innocence.  See, e.g., Harris v. Reed, 489 U.S. 255, 262 (1989); Murray v. Carrier, 477 U.S. 478, 495-96 (1986); Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002).  Whether there is cause "ordinarily turn[s] on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  Coleman v. Thompson, 501 U.S. 722, 753 (1991) (citation omitted).  Interpreting his papers broadly, Sable argues that cause is shown because his trial counsel failed to preserve these issues for appeal.  Pet. Mem. at 22.  But in order for a claim of ineffective assistance of counsel to be used as "cause" for an otherwise defaulted habeas claim, the petitioner must have properly presented his ineffectiveness claim to the state courts.  See Murray, 477 U.S. at 489 ("[A] claim of ineffective assistance [must] be presented to the state courts as an independent claim before it may be used to establish cause of a procedural default.");  Reyes v. Keane, 118 F.3d 136, 139-40 (2d Cir. 1997).  On direct appeal, Sable raised a claim of ineffective assistance only with respect to Odume's identification, which he argues was inappropriately bolstered by testimony that Odume was Sable's parole officer.  See Pet.

Direct Appeal Br. at 24.  However, as we discuss in section III.B.3 next, Sable has not shown that the trial court committed any legal error in admitting Odume's relationship to Sable. Accordingly, Sable has not shown that counsel was ineffective for not objecting to this testimony and therefore this claim cannot serve as cause to overcome a procedural bar.

Nor has Sable provided any evidence of actual innocence.  Accordingly, Sable's claims concerning the trial court's admission of witness testimony identifying him in surveillance footage, as well as testimony explaining what led investigators to Sable is barred from review.

3.    <u>Testimony Concerning Sable's Parole Status</u>

Odume identified himself as Sable's parole officer and testified that, based on his frequent interactions with Sable, he could identify Sable as one of the men who appeared in the surveillance footage.  (Odume: Tr.3: 289-91, 295-301).  The trial court instructed the jury that Odume's relationship to Sable was admitted solely to assist it in judging Odume's reliability in identifying Sable in the surveillance stills.  <u>See</u> (Tr.5: 6).  That instruction was sufficient to inform the jury of the relevance of this evidence.  In <u>Dunnigan v. Keane</u>, 137 F.3d 117 (2d. Cir.), <u>cert. denied</u>, 525 U.S. 840 (1998), the Second Circuit rejected a similar claim in a federal habeas case, concluding that the admission of a parole officer's relationship to a criminal defendant was proper because it could be helpful to a "factfinder, in evaluating a witness's credibility, to know the relationship between the witness and the parties in order to assess whether the witness may have reasons for lacking objectivity."  <u>Id.</u> at 126.  Courts reviewing similar claims have routinely held that admission of a criminal defendant's parole status, without more, does not constitute a due process violation for purposes of federal habeas review.  <u>See</u>, <u>e.g.</u>, <u>Crosby v. N.Y. State</u>, 2010 WL 744522, at *8 (E.D.N.Y. Mar. 1, 2010) (the mere and unintentional disclosure of

22

petitioner's parole status did not deprive him of a fundamentally fair trial); Mazique v. Ercole,

2008 WL 2884370, at *7 (E.D.N.Y. July 23, 2008) (admission of "extensive evidence regarding"

petitioner's "parole status and his subsequent violation of parole was essential in laying out the

narrative of the investigation and arrest" and did not deprive him of a fair trial).  Accordingly,

Sable has not shown that the Appellate Division's ruling on this ground was in error, let alone

that it was contrary to or was an unreasonable application of clearly established federal law.

4.      Preclusion of Testimony Regarding an Alternative Suspect

The trial court prevented Sable from questioning Detective Margaret Eng-Wallace

regarding other potential suspects in the case, and regarding whether Detective Eng-Wallace had

spoken "with other detectives about potential suspects," or had sought "assistance in locating the

suspects in this case."  (Eng-Wallace: Tr.3: 157-58).  Eng-Wallace's testimony on these matters

was either irrelevant or of only the most tangential relevance, and thus the exclusion of this

testimony did not deprive Sable of a fair trial.  See Hubrecht v. Artuz, 2010 WL 3187233, at *13

(S.D.N.Y. Aug. 11, 2010) ("A trial court's exclusion of evidence that was cumulative or

irrelevant cannot violate a petitioner's right to a fair trial because admission of the evidence

would not have affected the outcome.")

Sable argues that the trial court's ruling prevented him from challenging the prosecution

witnesses' identification testimony.  See Pet. Mem. at 19.  But defense counsel was free to argue

that the jury's own examination of the photographic evidence would show that the person in the

video stills was not Sable.

C.      Jury Instruction on Commingling of Evidence

Sable argues that the trial court should have instructed the jury to avoid commingling

23

evidence introduced for each crime and to "render a verdict separately and specifically upon each count submitted to it."  Pet. Mem. at 23 (quoting N.Y.C.P.L. § 300.10(4)).  According to Sable, "[t]his failure left the jury free to follow the prosecution's repeated directives to lump together evidence related to all of the burglaries," which allowed the prosecutor to rely on the stronger evidence admitted for one burglary to argue that Sable had committed all four.  Id.

The Appellate Division rejected this claim on the ground that it was unpreserved for appeal and was thus procedurally barred from review.  See Sable, 44 A.D.3d at 390.  The procedural bar constitutes an "independent" state ground.  It also constitutes an "adequate" state ground under the Cotto factors.

First, Sable's failure to object to the jury charge was "actually relied on" by the trial court in the sense that the trial court was never given an opportunity to cure the specific problem alleged by considering specific arguments regarding a no-commingling instruction.  Second, both statutory and New York case law indicate that a party must object to a jury charge in order to preserve the issue for appeal.  See, e.g., N.Y.C.P.L. § 470.05; People v. Moultrie, 6 A.D.3d 730, 730 (2d Dep't 2004).  Finally, Sable cannot show that he substantially complied with the contemporaneous objection rule as there was no objection whatsoever.  The Second Circuit has squarely held that "[a] state prisoner who fails to object to a jury instruction in accordance with state procedural rules procedurally forfeits that argument on federal habeas review."  Reyes v. Keane, 118 F.3d 136, 138 (2d Cir. 1997) (citation omitted); accord Bossett, 41 F.3d at 829 n. 2.  Accordingly, the procedural bar relied upon by the Appellate Division in this case is "firmly established and regularly followed," and therefore is an independent and adequate state ground barring review of the merits of Sable's claim.

24

Sable argues that trial counsel's failure to request the charge constitutes cause to overcome the procedural bar.  See Pet. Mem. at 31.  Although Sable exhausted this claim on direct appeal before the Appellate Division, see Pet. Direct Appeal Br. at 33, the claim of ineffective assistance is without merit.  Assuming that the evidence at trial would have supported such an instruction, Sable has not shown that counsel's failure to request the charge constituted deficient representation.  The decision not to request an instruction in this case amounts to reasonable trial strategy and therefore does not give rise to an ineffective assistance claim.  See Strickland, 466 U.S. at 690 ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable").  The defense theory at trial was that Sable was wrongfully identified as the person in the surveillance stills and that those images did not show him to be the individual committing any of the four robberies.  (See Tr.4: 8-9). Defense counsel could reasonably have made the strategic decision that the instruction would unnecessarily invite the jury to conclude that Sable was depicted on video stills for some of the robberies but not for others.  Because this was a "reasonably defensible legal strategy," Bierenbaum v. Graham, 607 F.3d 36, 59 (2d Cir. 2010); see generally Samuels v. Bennett, 2009 WL 2516850, at *24 (S.D.N.Y. Aug. 17, 2009) (defense counsel's decision not to request a manslaughter instruction was reasonable as it could have "reduced the persuasiveness of [defendant's] misidentification defense"), Sable's claim of ineffective assistance of counsel does not provide cause to overcome the procedural bar precluding review of this claim.

 As Sable has not shown cause for the default nor has he shown actual innocence, the procedural bar is an adequate and independent ground precluding federal habeas review.

D.    Sable's Adjudication as a Mandatory Persistent Felon

25

Sable argues that New York's persistent felony offender statute, N.Y.P.L. § 70.08, is unconstitutional in light of Supreme Court case law beginning with its decision in Apprendi v. New Jersey, 530 U.S. 466 (2000).  The Appellate Division affirmed the trial court's adjudication of Sable as a persistent felony offender, citing Almendarez-Torres v. United States, 523 U.S. at 239-47, which upheld the constitutionality of federal recidivism statutes that increased a defendant's sentence based on a defendant's prior convictions.  523 U.S. at 239-47.  Sable argues that the Apprendi-line of cases effectively overruled Almendarez-Torrez.  See Pet. Mem. at 33.  In addition, Sable argues that because N.Y.P.L. § 70.04(b)(iv) requires that a trial court find that the relevant "sentence must have been imposed not more than ten years before commission of the felony of which the defendant presently stands convicted" these "ancillary factual findings implicate" his "right to a jury trial."  Pet. Mem. at 33 (citing Blakely v. Washington, 542 U.S. 296 (2004)).

Sable has not shown that the Appellate Division decision to uphold his sentence was contrary to established federal law.  The relevant portion of section 70.08(2) provides as follows:

> When the court has found, pursuant to the provisions of the criminal procedure law, that a person is a persistent violent felony offender the court must impose an indeterminate sentence of imprisonment, the maximum term of which shall be life imprisonment. The minimum period of imprisonment under such sentence must be in accordance with subdivision three of this section.

Under the statute, "[a] persistent violent felony offender is a person who stands convicted of a violent felony offense . . . after having previously been subjected to two or more predicate violent felony convictions."  N.Y.P.L. § 70.08(1)(a).

Apprendi and its progeny constitute no bar to the sentence Sable received because these cases exempt "the fact of a prior conviction" from their holdings that "any fact that increases the

penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 489-90; Blakely, 542 U.S. at 301 (2004). Accordingly, district courts have routinely upheld the application of section 70.08 in the wake of challenges such as Sable's.  See, e.g., Adelman v. Ercole, 2010 WL 3210718, at *4-5 (E.D.N.Y. Aug. 12, 2010); Boutte v. Poole, 2008 WL 3166696, at *3 & n. 5 (S.D.N.Y. Aug. 4, 2009) (collecting cases); Quan v. Potter, 2007 WL 3223217, at *7 (E.D.N.Y. Oct. 29, 2007); Garcia-Lopez v. Fischer, 2007 WL 1459253, at *14 (S.D.N.Y. May 17, 2007).  The fact that N.Y.P.L. § 70.04(b)(iv) limits relevant convictions to those where sentences have been imposed within 10 years does not create an independent, "ancillary factual finding implicat[ing]" Sable's "right to jury trial."  Pet. Mem. at 33.  As a logical matter, there would be no way of applying the "prior conviction" exception without a court determining the date of the conviction to ensure that it was indeed "prior" to the sentencing.  Accordingly, it was not an "unreasonable" application of the Apprendi rule for the Appellate Division to uphold Sable's sentence.

Conclusion

        For the foregoing reasons, Sable's petition for a writ of habeas corpus should be denied.

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

        Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days including weekends and holidays from service of this Report and Recommendation to serve and file any objections.  See also Fed. R. Civ. P. 6(a), (b), (d).  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. William H. Pauley, III, and to the undersigned, at 500 Pearl Street, New York, New York 10007.  Any request for an extension of time to file objections

must be directed to Judge Pauley.  If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal.  See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated:  September 23, 2010
        New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies to:

Oscar Sable
04-A-5119
Clinton Correctional Facility
P.O. Box 2001
Dannemora, NY 12929

Leilani Rodriguez
Assistant Attorney General
120 Broadway
New York, NY 10271

must be directed to Judge Pauley. If a party fails to file timely objections, that party will not be

permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v.

Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham,

Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated: September 23, 2010
    New York, New York

                                GABRIEL W. GORENSTEIN
                                United States Magistrate Judge

Copies to:

Oscar Sable
04-A-5119
Clinton Correctional Facility
P.O. Box 2001
Dannemora, NY 12929

Leilani Rodriguez
Assistant Attorney General
120 Broadway
New York, NY 10271